Next on the afternoon docket is number 5-20-0102, Jefts et al. v. Menard, Inc. et al. Arguing for the appellant, Kathy Jefts, is Shane Carnine. Arguing for the appellee, Menard, Inc., is Kara Wade. Each side will have up to 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Please remember only the clerk of the court is permitted to record these proceedings today. Okay, Mr. Carnine. Thank you, Your Honor. May it please the court, Shane Carnine, attorney for the appellant. Kathy Jefts was injured in a parking lot, but this is not a simple trip and fall case. The defendant, Menard, here, had notice of an issue that involved tar in a crack. They had been advised to fix the issue, and they ignored that advice. Kathy fell in the parking lot on August 30, 2015. Menard is the only remaining defendant, but just to make this make a little bit more sense, I'll let you know there were two other defendants that settled. The briefs refer to defendant Rhodes Concrete Construction. They entered into a contract with Menard's on May 27, 2015, to do repairs. And that's significant because the date of the contract is three months before the plaintiff fell at the parking lot. So Rhodes Concrete Construction was retained to fix some known problems in this parking lot. The other defendant was Effingham Asphalt. They subcontracted to do the work. Procedurally, all three of the defendants filed a motion for summary judgment. There was a hearing, and the arguments can be found beginning in the appendix of the appellant's brief on page 10. I've also included in the appendix the table of contents for the common law record. And I'd like to point out that just the table of contents takes up seven pages. And so there is a voluminous file here with many, many depositions and many pleadings. It seems, though, that this, Mr. Carnine, it seems, though, that we have an issue of foreseeability and notice. Just like even though there's a lot of voluminous material here, the law is pretty clear. Would you agree that the issue here is whether they had a duty and whether there was a breach? And in the breach, there has to be some foreseeability or notice to Menard's. Certainly, Your Honor, certainly. So what is the notice and the foreseeability here? Well, the notice issue is actually pretty clear cut. I can address that right now, but page 19 of the appendix contains the arguments in the lower court. And I was discussing with the trial judge the issue of notice. I said, if notice is an issue, there is very clear testimony that there are cart corral people who work for Menard's and are in that vicinity every day, every single day, if notice is an issue. The lower court said, good point. You're right. Let's assume that's correct. And so the plaintiff's position is, yes, notice would be an issue, foreseeability would be an issue. The court should go through a duty analysis. But when the issue of notice came up, the judge said, you're right, they've got notice. They've got cart corral people there every single day, which takes notice out of issue. It creates a material issue of genuine fact. One of the problems we have here is, I think, correct me if I'm wrong, is we don't really know why the judge ruled the way he ruled, right? This is just a docket entry ruling. Yes, you're on. This is a docket entry ruling. And how much time was there between the time that the job was completed and your client fell? About three months. And I have to point out the job being completed. Job was completed, according to my notes, in July and your client fell in August. Okay. Yes, Your Honor. About six weeks? That's correct. Did you ever determine in all of this discovery who actually put this blob of asphalt down near the cart corral? It is not definitively known who put the blob down. What is definitively known is that representatives of the other defendants recommended to the Menards people that they fix it. They recommended you need to do something about this. Now, are you talking about this particular blob of asphalt, let's call it, that your client fell on, or are you talking about generally about the parking lot? Well, it's about the parking lot and portions of the parking lot that were not routed. Here's some of the important deposition testimony. Greg Cabbs of Effingham Asphalt looked at the parking lot before the incident happened. He told the manager of Menards the material in the parking lot would come loose. He gave information so that the parking lot would be in a decent condition, but the Menards manager declined to fix that particular issue due to the cost. We don't know exactly who did it in terms of putting that material there, but what we do know is Greg Cabbs of Effingham Asphalt pointed out the similar issue and said, you need to fix this. The Menards manager said, well, yeah, but it's a little bit too expensive. We don't want to fix that part. The appendix to the appellant's brief does contain the lower court's order. Justice Cates, I agree with you. It's not clear of the reasoning or why a summary judgment was entered. It says, defendant Menards motion for summary judgment granted, but it's clear that there were issues of fact because the other motions were denied. Remaining motions were taken under advisement for about an hour. The issue really is, did the trial court err in granting summary judgment in favor of Menards? The standard of review here is de novo, and we are stuck with looking at the docket entry. We also have the arguments that I referenced briefly. Again, appendix page 19 is where the notice issue came up, and the judge said, good point, you're right, let's assume they've got notice. The orders found on page 7 of the appendix to the plaintiff's brief doesn't contain reasoning. It does not contain factual findings. It shows that there are genuine issues with respect to the other parties. The only finding really is it says, this court finds the plaintiff's lawsuit is hanging by a gossamer thread. Now, that's not really a finding of fact. That's just kind of an example of how the arguments went. But the motion was heard on 1022 of 19. There are three different issues that have been raised. The first is the defendants argue there was no unreasonable risk of harm. The second is they argue there was no notice. We briefly touched on that already. And then the third, they argue that the condition was open and obvious. Page 40. Let me ask you about this open and obvious issue. Yes, Your Honor. If it's open and obvious, then you have to know about it. Would you agree or not? If it's open and obvious, that addresses two elements of a four-part duty analysis, if it's open and obvious. And the conclusion that it is open and obvious is not supported by the record. The Wade versus Wal-Mart case was discussed, but the trial court below didn't really go through any analysis of the open and obvious doctrine. And there are references in the transcript that the trial judge incorrectly applied the law. On page 8, the lower court said it's a requirement to plead to win, isn't it, with respect to open and obvious. The court misapplied the concept on page 9 of the record, which is also page 17 of the appendix, and said open and obvious says if it's open and obvious and you trip over it, that's your problem, not mine. Now, it bears repetition here that this is not a simple crack in a sidewalk. This is not a pothole. This is what has been described as a spongy, tacky, moving substance that held on to Kathy's shoe. And that's something that nobody could have perceived. The facts of this particular case of how it happened was she was pushing a shopping cart back into a cart corral. And then when she turned, she stepped into the substance. And so, I guess there are two points with the open and obvious doctrine. The first one is whether a condition is open and obvious can present a question of fact. And then secondly, it's not an automatic bar to a finding of duty. Here we have a very clear dispute over the nature. Isn't open and obvious an affirmative defense? Open and obvious really is just a way of looking at two of the four parts of the duty analysis. What do you mean by duty analysis? Well, there are four factors that we would look at any time we're trying to decide whether a defendant has a duty. The first factor is the likelihood of the plaintiff's injury. The second factor is the reasonable foreseeability of the plaintiff's injury. And so, what we have come to know... Just a second. You're talking about the Ward v. Kmart analysis. Are you familiar with Ward v. Kmart? Yes, Your Honor. And that's the duty analysis you're talking about? Yes, Your Honor. It's a similar duty analysis in most negligence cases. But open and obvious means the likelihood of injury is slight because the issue is open and obvious. The foreseeability of injury is slight if you have something that's open and obvious. And usually that's somebody jumping into a body of water, diving into a swimming pool, jumping off of a trampoline. Something that is easily... Do you find that case? Well, Judge, the crack and the sidewalk cases, I think, are very, very different. Those usually involve the Tort Immunity Act. Those usually involve the de minimis rule. Those usually involve cases where the appellate court has said, essentially, the stumbling point arises around two issues. When you have two pieces of concrete that come together, if you've got a two-inch gap, then that's the stumbling point of where you should take notice of that and it should be open and obvious. But I think what we really need to do is define the term obvious. And in the Wade v. Walmart case, the court says obvious means that both the condition and the risk are apparent to and would be recognized by a reasonable person in the position of the plaintiff. And so you've got the condition and you've got the risk. And that's why I said this is not just a standard somebody fell on a pothole or somebody tripped on a sidewalk. The facts of this case are vastly different. And some of the other testimony that I'd like to highlight... Can we back up just, counsel? Can we just back up a little bit? I have a little question. If it wasn't sticking up and you said it wasn't, it wasn't open and obvious, you had to step in it. So how could the court people that did retrieve the courts, how could they have known it was even there unless they stepped in it? And you're saying they must have all stepped in it, I guess. I don't know. I'm having trouble with that. Because they couldn't warn anybody if they couldn't see it. So that would be... Yes. Thanks, Senator. What's your argument there? Judge, that would be the difference between constructive notice of an issue and actual notice of an issue. So you're saying constructive notice because they couldn't have actual notice unless they actually stepped in it. Is that correct? They would have constructive notice. There's testimony that this existed. Let me find it real quick. Even the defendant's brief on page 10 says this may have existed for as long as two years prior to the occurrence. That's page 10 of the defendant's brief. And so you would have constructive notice there. And we are just at the summary judgment stage here. We're not at a directed verdict. We're at a summary judgment. And the only question is, is there a genuine issue of material fact? And so we would have a constructive notice issue there. We would also have an actual notice issue when you've got the contractor pointing out the glob and saying you need to replace this. That was after she stepped in it, allegedly? No, sir. That was before she stepped in it. Before she stepped in it, the contractor told the Menards manager, you need to replace this. It's an issue. And with the may I may I continue or is my time up? No, go ahead. Take a few more minutes. Thanks, Judge. With the notice issue, our position also is that as a matter of law, it's not really an issue at all. The only reason that notice comes up as an issue, it's usually a case in a grocery store where a grape falls. And then the question is, well, how long was the grape there? How did it get there? And was the defendant land owner in a better position to find that grape and to stop this from happening? That's when notice becomes an issue. But the case law says that when the condition is either placed there by the defendant or his servants, you don't even have to get into notice. And the reason behind that is because when you're comparing the knowledge that the property owner had versus the knowledge that the person encountering the issue had, the property owner knew about it. And so there's not even a notice issue. But that's the that's the point that I was trying to make in the lower court with the reference earlier to the transcript. OK. Thank you, Mr. Carney. Appreciate that. Thanks, Your Honors. I believe. There you go. Thank you, Your Honors. May it please the court and counsel. First, I want to start out by talking about the elements for a premises liability claim. That's what's been asserted here against our client, Menard. To succeed on her claim, the plaintiff here must prove ordinary negligence plus three additional elements that the condition of the parking lot presented an unreasonable risk of harm to customers. That Menard knew or should have known about the condition and risk. And that Menard could reasonably expect that customers would not discover or realize the danger or would fail to protect themselves. These elements are set forth by the Illinois Supreme Court in Jordan v. National Silk Corporation 183 ILL 2D 448. In reality, plaintiff cannot meet any of these elements. And Mr. Carney, in the trial court and even during this argument, made a big deal out of this purported conversation that Mr. Cabas from Effingham Asphalt had with the manager for Menard prior to this occurrence. It should be noted that this conversation could have taken place more than two years prior to what happened here. And what was specifically stated in Mr. Cabas' testimony is that he was trying to make a business pitch to Menard to get them to hire his company, Effingham Asphalt. And he told Mr. Jones, the general manager, that, quote, the people that filled the cracks before don't route. And I told him that that comes loose and it didn't fill the cracks. And I asked him to give us a chance and he said, it's just a lot more expensive to do it that way. And that's found at C1132-33. The problem with this is that this statement does not in any way provide actual or constructive notice of the real condition of the parking lot, speculative at best. But the more important issue is that plaintiff is citing to this testimony for the idea that this gave Menard's notice of a problem with the parking lot and they did nothing to address that. Well, the undisputed facts of this case is that Effingham Asphalt, for whom Mr. Cabas worked, actually provided the services. So to the extent that he was telling our client there's an issue because these cracks aren't routed, we addressed this when Effingham Asphalt, mere weeks before this occurrence happened, performed the superior crack-filling services in our parking lot. Let me ask you a question. One of the affidavits or depositions I read indicated that the manager from Menard's, Chris, I think his name was, not only did he inspect the parking lot before the cracks were repaired by Effingham Asphalt, but he also did that during. And he also indicated that he routinely walked the parking lot. So why wouldn't he be in a position over a period of six weeks to discover this unreasonable condition, as the plaintiff calls it? I guess our point is, Your Honor, that this condition likely did not exist. And it's plaintiff's burden to show when the condition began to exist and that we had notice of it. And she cannot do that. Because the only evidence we have is that Mr. Jones regularly walked the parking lot. And actually, even Mr. Cabas, after he performed the service. Sorry, go ahead. Mr. Jones, Chris. Yes, that's Chris. Yes. He regularly walked the parking lot, as did our front-end assistant manager, Ms. Danielle McKinney, who actually took photos of the raised asphalt that caused the issue here. And they had never been told in the seven years prior to this incident. They had never been told of any issues relating to the parking lot. They had never seen any raised filler in the parking lot. Counsel indicated that somehow the court concluded that we had notice because of the cart crowd personnel. Actually, that is nowhere in the record. Absolutely, notice is an issue here. The cart crowd personnel never told the front-end manager, Ms. McKinney, of any issues in the parking lot. We never had anybody fall in the parking lot before. I mean, that's the only evidence in this case. There is no actual notice, and there's no constructive notice here, Your Honor. And these speculative statements that may have occurred two years before the fall certainly did not provide notice. It did not establish that this was an unreasonable risk of harm. And if anything, to the extent that even if it would have, we addressed this concern by having Effingham Asphalt provide the services. So, again, no notice, no unreasonable risk of harm. And briefly, I just want to touch on that topic. If you look at the photos that was taken by the front-end manager, and they're found at – there's color photos of it at C934 through 935. You can see that this is an open and obvious condition. The crack is dark. The asphalt surrounding it is a lighter gray. The raised filler was above the – did raise above it. It was not below it. It was sticky, but it didn't move. And you can see that. And Ms. McKinney confirmed that in her deposition testimony. So, again – Under the open and obvious doctrine, I mean, in Ward v. Kmart, the whole issue there was that there was a big post. And when people came out of Kmart, they ran into the post, and the court held them liable for that. Even though they created the situation, it was – according to Kmart, it was open and obvious. The court said it's easy to understand how people exiting the store could be distracted. So – I guess, Your Honor – Excuse me. How is this case different than the Ward v. Kmart line of cases that we've seen develop in Illinois? There's two different distinctions, Your Honor. First of all, we didn't – we didn't – there is no evidence whatsoever that we created this condition or that we had any notice of it. In fact, the only evidence in the record is that likely this came about because a patron ran over it with her tire and pulled it out. That's the only speculative evidence we have here. So, we – first of all, we didn't – go ahead. You're speculating. It is speculative. It's in an affidavit from one of your employees that this could have been necessary. That's correct. That's correct. But in this voluminous discovery that plaintiff has referenced, she can't point to any reasoning for it. And so that's the only evidence we have. And if you look at the Donahoe case, which I'll get into in a moment, you are allowed to make inferences based on what's in the record. And that's really the only thing that's in the record. But going back to your question about the Ward case, the other issue here is that we had no – again, we had no notice of the circumstances that were present in the parking lot. And we didn't create it. So, that's the distinction here, Your Honor. We did not know that this was even in our parking lot. And as soon as we found out after she fell, we resolved it. And again, to the extent that he's trying to relate to these comments from Mr. Kavis as creating notice, that just doesn't apply because we used them to provide services. What about Mr. Carnine's last argument he made that this is a condition that was created by the landowner and so we don't have to worry about notice? Well, Your Honor, he only partially cites from that Donahoe case. And I go into it in great detail in our brief. But actually, if you look at Donahoe, it supports the opposite conclusion because there – the court talks about applying liability if it can be inferred that the property owner themselves created the condition. Here, there's no evidence of that. It shows basically the same court Donahoe stated, if there's no showing how the substance got on the premises, which is exactly what we have here, liability will only be imposed if it appears that the proprietor or his servant knew of its presence or that the substance was there a sufficient length of time so that in the exercise of ordinary care, its presence should have been discovered. So, again, the court in Donahoe says, well, you do have to do the notice analysis if there's no showing as to how the substance got on the premises. Which is exactly what happened here. And further, they're only willing to kind of forego the notice analysis if the substance that's on the property is actually related or sold as part of the operations of the defendant. And here, Your Honor, I mean, this is part of a parking lot. We certainly didn't sell it. We certainly didn't – it wasn't part of our operations. I think the reason they infer is because it should be more likely that the defendant knew rather than – because it's most likely that they created the condition and not a third party. Well, we don't have that here, Your Honor. In fact, again, I know we've talked about this already, but the only evidence whatsoever is that maybe a customer rolled over this and brought it up out of the crack. So, in Donahoe, actually – Excuse me. In Donahoe, they did say that it could be a situation where it's related to the operations. Don't you think a parking lot is related to the Menard's operations? I mean, they routinely have these cracks sealed. Well, I think, Your Honor, when they're talking about related to the operations, they're normally talking about a substance or goods sold by that defendant. Because they're constantly there. They're constantly in the area. It's more likely that something done by the employees is what resulted in this. And I don't believe that a parking lot is necessarily part of the operations as what the court was considering in the Donahoe case. Because there, I think it was onions. It was a restaurant. It was onions. But if you look at the cases that the Donahoe court cited where directive verdict should have been entered because there was no actual or constructive notice by the owner, it dealt with, like, a banana peel on the stairs. Or something outside the premises that was not part of the operations of that particular property owner. And I think that's exactly what we have here, Your Honor. So it's more akin to those cases where the Donahoe court said, no, they have to have notice. The notice element has to be met. And so it's more akin to that than I would not agree that it's necessarily part of our operations. The fact that we're arguing about all these facts. Don't you think I mean this is before us on summary judgment where the court made no findings of any kind in its order. You don't think there's a genuine issue of fact as to notice. I don't, Your Honor, because if you look at the plaintiff's testimony, it's evident that she said that the condition of the parking lot was visible to her. That she had no problem seeing it. That she was not distracted. The condition of the parking lot is not disputed, Your Honor, because that's not disputed. First of all, it's a matter of law. It's not an issue of fact under the Bruins case, which I think is the case that you were referencing. The Bruins case, the Supreme Court said essentially that whenever there's no dispute as to the condition of the property, it's a matter of law. And that's what, so there are no disputed facts about the condition. And from that, all the elements you can look at it and she can't, and the plaintiff can't meet any of them. So there really are no disputed facts as to the notice or the condition. Because, again, the only notice that they can point to is the testimony by Mr. Cavus. And there's absolutely no dispute that this was well before the time of the fall. And that Effingham Asphalt provided the services after that notice, to the extent that it could be considered a notice, was provided. So there are really no disputed facts. And, you know, if you look at, I know that the court didn't give much in the docket entry. But if you look at the argument, Your Honor, we go through every element. We go through every issue that was raised in our brief. And he agreed with us on each topic. So to the idea that the judge and the record agreed with you in each. Correct, Your Honor. He basically every time we talked, he asked me what our positions were. I stated all four arguments. And he agreed that we had carried the day that the plaintiff could not meet any of her elements. And just quickly, I want to touch on the duty analysis. We've talked about the open and obvious condition, which I believe the photos show that it was. And the affidavits show that, or excuse me, the testimony from plaintiff confirms that it was. But also you have to factor in the burden that would be on the property owner to protect against this type of injury. So essentially, Menards, once a year, hires a contractor, someone with expertise in the asphalt business, to assess his parking lot and perform any repairs that are necessary. So they did that the year that Jess fell in the parking lot. They used I-50 asphalt. Under what the plaintiff is essentially asking is us to present a perfect parking lot. Under the duty analysis, that's not required. Property owners do not have to have a perfect premises. Instead, I mean, once a year, we do repairs. We review it. As he pointed out, we have corral guys. Mr. Jones reviews it. None of this ever came up. So I'm not sure what we could have done differently here, Your Honors. I mean, again, we cannot have a perfect parking lot. We can't have a crack-free parking lot. That's not possible in Central Illinois. So to the extent that I would argue that plaintiff can't meet any of the elements of her case, I believe that we discussed all of them during the argument, and the trial court agreed with this, and that the order should be upheld. Are there any other questions? Justice Moore? Thank you. Thank you. Yes, Your Honor, thank you. I've got several things to try to cover based on that argument. The first thing that I need to point out is there was a reference to services that were provided. There was an indication that they knew about this for two years, and then services were provided. I think that the inference that defense counsel wants you to draw is that they fixed the problem at issue. They did not fix the problem at issue. The problem existed for two years. It was pointed out to Menard's management. Menard's management said, we do not want to do that. We do not want to fix this particular issue. And so the term superior services is used, sprinkled a few times in the defendant's brief, and it was just used in argument there. But to say that superior services were provided and, therefore, we complied with our duty, that misses the mark. That misses the point. Superior services were not provided. It probably would have been if Menard said, yeah, go ahead and fix this. Another question defense counsel asked was, what could we have done differently? Well, what they could have done differently is follow the suggestion given to them to fix the problem. They were told, basically, the goo that's in here that somebody else did, it's going to come out, and it's going to cause a problem. And the Menard's manager said, well, we don't want to do that. So what they could have done differently is fix the problem. An issue was raised about how substantial of a burden it would be. Now, I agree that property owners don't have to have perfect premises, but they did over 12,000 linear feet of this material. And the testimony is, once we get to 12,050 feet, we're done, and we will walk off the job. And so the burden is slight. The burden here was do a couple more feet. Do what you were told to do. Do what was suggested to do. Now, there is also a suggestion that this was a business pitch, and that's just mind-boggling. Imagine Boeing with their 737 MAX falling out of the sky saying, well, that was just a business pitch when somebody told us that the sensors were off and that our jets would crash. That's just somebody making a business pitch. Well, that's exactly why he was there. He was there because they wanted to find somebody to fix the problem. They went to the property. They looked up and down the property. They recommended changes. They told Menard, this is going to come out and cause a problem. So to say it's a business pitch is just a bizarre, bizarre thing to say. With respect to the Donahoe case and whether this is part of operations or not, we are not talking about a banana on stairs. We're talking about tar on a parking lot that they knew about for more than two years. Kathy Jeffs didn't know about that, and you can't expect her to act like a 6-year-old kid and just skip over any crack that she sees. They knew that they had a problem. They knew that they had an issue. There are several different things that I want to highlight from the arguments with the lower court to show that there are genuine issues of material fact. Appendix page 20 is what I already referred to when we were talking about notice. And the court said, good point. You're right. Let's assume that's correct. Now, that's not finding a genuine issue of material fact. Appendix page 23, we're talking about the photo. I'm quoting the court here. She's not going to know that. All she knows is she fell and broke her wrist. Appendix page 25, question was how long did it exist? The court said, how is she possibly going to know that? Appendix page 28, I'm quoting from the court again. This is a very interesting comment, and it's very telling. The court says, why isn't that an issue of fact that precludes summary judgment? Appendix page 36, the court says, let's say you win summary judgment. So he's obviously weighing the facts here. Let's say you win summary judgment. How are you going to get passed a motion for directed verdict? It's almost like he has ruled in advance of the issue. Page 37 of the appendix, he says he's almost as confident in his ruling that Menard's motion for summary judgment is granted. And so there's a clear lack of analysis. I see that my time is up. I thank you. Thank you, Your Honors. I ask that the – Be assured, we will read all the appendix and everything that you've cited. Thank you, Your Honors. Your time is up. All right, thank you both for your arguments. This concludes counsel. We'll take the matter under advisement and we'll issue a disposition soon.